### WESTENFELDER v. GREEN et al.

(Circuit Court, D. Oregon. February 9, 1897.)

#### No. 1,941.

ADVERSE POSSESSION—POSSESSION OF GUARDIAN—TRUSTS.

One W. left his wife and children in Germany, and came to Oregon, where he married another woman, and had other children. Upon his death, one S., who had acted as· W.'s agent in the management of his real estate, caused himself to be appointed guardian of W.'s Oregon children, and, as such, held possession of the real estate, and applied the rents to the support of these children until their majority, when he turned the property over to them. In the meantime, the German children, who had been informed of their father's remarriage, and one of whom had come to the United States, and lived there many years, made no attempt for over 20 years to assert any interest in their father's property. *Held*, that even if S., at the time of W.'s death, knew of the existence of the German children, and if he could then have been charged with a trust in their behalf, his possession of the real estate as guardian of the Oregon children was adverse, and any rights of the German children were barred by their delay. 76 Fed. 925, reaffirmed.

On Petition for Rehearing. Denied.
For former opinion, see 76 Fed. 925.

G. G. Ames and Wallace Nash, for complainant.
Emmett B. Williams and W. W. Thayer, for defendants.

BELLINGER, District Judge. The complainant files his petition for a rehearing upon the following, among other, grounds: First. That the defense of the statute of limitations should have been raised by demurrer, not by answer. Second. That the evidence before the court shows that J. E. Sedlack was in the control of the property at the death of Jacob Westenfelder, not only as his agent, but as trustee for the German heirs, under an express trust, and continued to act in that capacity down to his appointment as guardian for the Oregon children; and that at the time of that appointment, and thereafter, the existence of the German heirs, although known to him, was by him concealed from the court; and that no proceedings were taken by Sedlack, or by any one else, to administer the estate of Westenfelder, or to divest himself of the trust; and that, consequently, his appointment as guardian of the Oregon children was not only subsequent, but was in subordination, to the previous trust in favor of the German heirs. There are several grounds upon which the petition is based, but those just mentioned embody the substantial grounds of such petition.

The defendants had no opportunity to raise the defense of the statute of limitations except by answer. The facts upon which they rely do not appear in the complainant's complaint, and the defense of the statute could not therefore be raised by demurrer.

In considering the second ground of this motion, I have carefully re-examined the testimony referred to in support of it, and conclude that there is nothing in the testimony that alters the facts from the case as presented in the supreme court, and heretofore referred to in the opinion in this case. It is true that Joseph E. Sedlack was the agent of Westenfelder at the time of Westenfelder's death, but that death terminated the agency. There is no reason for the assumption that Sedlack continued to act in a trust capacity as a trustee of the German children. If he knew of the existence of these children, that fact can make no difference. He does not seem to have recognized any right or interest in these children. On the contrary, his appointment was as guardian of the Oregon children, and his administration of the estate of Jacob Westenfelder was as such guardian, and not otherwise. It does not appear that he was ever appointed administrator of the estate of the deceased, Westenfelder, or that he in any way recognized, as already stated, the German children. There is considerable testimony tending to show that Sedlack knew of the existence of these children in Germany, and the inference is sought to be drawn from the testimony that he recognized some right in them, from the fact that he is said to have been present when the existence of these children was discussed, and on one occasion he inquired of a witness as to the best means of communicating with these children. It does not appear, however, that he ever did communicate with them in any way. On the contrary, it does appear that from the date of his appointment, in June, 1869, up to the time of the final settlement of his trust as guardian of the Oregon children, he collected the rentals of this property, applied it to the payment of the expenses of the administration of the property, and in support of the Oregon children.

Frederick Westenfelder, nominally a defendant in this suit, but whose interests are identical with those of the complainant, and who testifies in the complainant's behalf, admits that his mother was informed of his father's second marriage by letter received from Oregon about 1860 or 1861. He also testifies that a man named Butler visited them at their home in Leopold Haven, and communicated to them the fact of his father's marriage in Oregon. These people therefore knew of the precise location of the elder Westenfelder. Notwithstanding this fact, Frederick left Germany in 1872, when he was 21 years of age, came to this country, and settled in St. Louis, where he remained until 1889, a period of 17 years. He did not find out where his father was, so he testifies, until 1882, when he was informed of his death by a man named Groner, in answer to some inquiries which he had caused to be made in that respect. But even then Frederick Westenfelder did not come to Oregon until after the lapse of 7 years more. Now, during all this time there was no attempt to assert any right on the part of Frederick Westenfelder, who for 17 years was in the United States, or on the part of his brother in Germany, who has never been here.

Suppose it is true that the assertion of a right of control over this property by Sedlack, as the guardian of the Oregon children, would not preclude the German children from insisting that he was charged with a trust in their behalf, inasmuch as they, and not the Oregon children, were the lawful heirs of the deceased, Westenfelder, and were therefore entitled to inherit his real estate; yet it does not follow that this fact will prevent the running of the statute of limitations, where no attempt is made to enforce any such trust, or to have one declared, and where the trustee claims to hold by a title adverse to the heir, to whom the knowledge of such adverse holding is brought by collateral facts from which such knowledge is implied. It is not a question of right, interest, or estate, legal or equitable, in the German children, during the time that Joseph E. Sedlack was managing the property as guardian of the Oregon children, but it is a question of the statute of limitations. In whose behalf, for whose interest, did Sedlack, as a matter of fact, act? It certainly is not open to question that the remedy to enforce a resulting or constructive or any kind of trust may be lost by lapse of time, and by the assertion of interests hostile to the particular trust; and that is what has happened in this case. As stated in the opinion of the court, the death of Westenfelder terminated whatever agency theretofore existed in favor of Sedlack. Thereupon Sedlack appeared in court with a petition to be appointed guardian of the Oregon children, and in that relation, and in no other, assumed to control this property. He might have been charged with a trust in favor of the German children against his own intention, but this was not done; and upon the fact of such intention, and of collateral facts which imply a knowledge of it on the part of the German children, depends the running of the statute of limitations, rather than upon the fact of the right, if right there was. But that the authority exercised by Sedlack was in behalf of the Oregon children is without question. It is shown unmistakably by the acts of the

parties, and by the record of the proceedings had in the probate court. It is wholly immaterial that Sedlack's account is in the form of an administrator's account, and is entitled "In the Matter of the Estate of Westenfelder, Deceased," and that taxes and other charges were charged therein as against the estate of the deceased, Westenfelder. The fact, nevertheless, appears that the Oregon children were treated by Sedlack as the sole beneficiaries of this estate; and, whatever the form of the account, it was in fact his account as guardian, and not otherwise. Attached to that account is his oath, in which he deposes and says that he is guardian herein, and that the foregoing, his final account with the estate of his said ward, is a full, true, and accurate account of all the receipts and disbursements on account of said estate; the estate in question being treated as the estate of the ward. And the order made therein is entitled "In the Matter of the Guardianship of Clementine Westenfelder, a Minor"; and in this order it is recited that Joseph E. Sedlack, guardian of the estate of Clementine Westenfelder, appeared, and fully settled and accounted for the estate of his ward, and that his settlement was approved, and that he was thereby discharged from all further liability as such guardian. Following this is a letter addressed by Joseph E. Sedlack to his ward Clementine Westenfelder, in which he states to her that "now the property is yours. You have only to settle with your stepmother," etc., enumerating some charges against the property, in order to entitle her to come into the full and complete possession and enjoyment of the same. This evidence is conclusive as to the relation in which Sedlack controlled the real estate in question, and shows beyond question that he held it as the guardian of the Oregon children. Assuming that there was a trust, when that trust is repudiated by clear and unequivocal words or acts of the trustee, with the knowledge of the beneficiary, or facts from which knowledge is implied, the statute will run. And, in the absence of a statute of limitations, it has been held that when the trust relation is repudiated, or time and long acquiescence have obscured the nature and character of the trust, or the acts of the parties or other circumstances give rise to presumptions unfavorable to its continuance, in all such cases a court of equity will refuse relief on the ground of lapse of time, and its inability to do complete justice. Philippi v. Philippe, 115 U. S. 157, 5 Sup. Ct. 1181. Where a constructive trust is made out in equity, time protects the trustee, though his purchase would have been repudiated for fraud. In few cases can a constructive trust be enforced after 20 years' peaceable possession by the person who claims in his own right, but whose acts have made him trustee by implication. Boone v. Chiles, 10 Pet. 177.

Applying this doctrine to the present case, where the prescribed limitation is 10 years, and the right of plaintiff is barred by time: As already stated, upon the death of Westenfelder there was no presumption that Sedlack was in control of his property as agent. If he exercised any control over the property thereafter, it necessarily must have been in some other right. What that right was, was plainly disclosed by his guardianship proceedings. It was

open to whom it might concern that he was thenceforth acting as guardian of the two Oregon children, until the majority of one, after which he acted as guardian of the other until the final settlement of the estate. He accounted to these children for the rentals of the property. He did not at any time recognize any right in the German children, whatever he may have known of their existence. During all this time and the succeeding years, covering a period of more than 20 years, the German claimants asserted no right in the premises. Upon such a case, their claim of title or equities against the possession so held in the right of others is barred. The petition for a rehearing is denied.